UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
JANE DOE,

                Plaintiff,

      v.

CITY UNIVERSITY OF NEW YORK,
LAGUARDIA COMMUNITY COLLEGE,
AND HANY FAM.

                Defendants.
---------------------------------------------------------X

Case No.

**COMPLAINT**
AND DEMAND FOR
A TRIAL BY JURY

Plaintiff JANE DOE ("Plaintiff"), by and through her attorneys, C.A. GOLDBERG, PLLC, hereby complains of Defendants as follows:

## NATURE OF THE CASE

1. This is an action for damages for sex discrimination, sexual harassment, a hostile educational environment, the infliction of various torts and for breach of contract as provided for under New York State Law. Plaintiff complains pursuant to Title IX of the Education Amendments of 1972, 10 U.S.C. § 1681, *et seq.* ("Title IX"), and the New York City Human Rights Law, New York City Administrative Code, § 8-107, *et seq.* ("NYCHRL"), and raises claims under New York State tort and breach of contract law.

2. This is a case about a professor using his position at an institution of higher education as a hunting ground to access vulnerable female students and coerce them into *quid pro quo* sex arrangements; and it's about an institution disregarding its duties to a student so victimized.

3. Plaintiff suffered significant injuries as a result of her professor's gross misconduct which included subjecting her to sexual innuendos, sexual advances and propositions, and the

1

suggestion of a quid pro quo arrangement that involved the exchange of good grades for sexual favors.

4. Plaintiff was subjected to further injuries when her college failed to properly and expeditiously investigate her complaint; and then failed to take appropriate and sufficient corrective measures upon its findings of sexual harassment.

## JURISDICTION AND VENUE

5. This court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331.

6. The Court has supplemental jurisdiction over Plaintiff's claims brought under city and state law pursuant to 28 U.S.C. §1367.

7. Venue is proper in this district, pursuant to 28 U.S.C. §1391(b), as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

8. At all times relevant to this proceeding, Plaintiff was and is a resident of the State of New York and County of Kings.

9. At all times relevant to this proceeding, Defendant THE CITY UNIVERSITY OF NEW YORK ("CUNY") was and is a public university system, duly existing pursuant to, and by virtue of, the laws of the State of New York.

10. At all times relevant to this proceeding, Defendant CUNY was and is an institution of higher learning as those terms are defined under the New York Education Law (see NY Edn. Law §2).

11. At all times relevant to this proceeding, Defendant LAGUARDIA COMMUNITY COLLEGE ("LaGuardia") was and is a community college operated and/or maintained by Defendant CUNY in Long Island City, Queens County.

12. Upon information and belief, Defendant CUNY receives federal financial assistance.

13. At all times relevant to this proceeding, Defendant HANY FAM ("Professor Fam") was employed by Defendant LaGuardia. At all relevant times, Professor Fam taught the "Human Anatomy and Physiology" course offered at LaGuardia. Upon information and belief, Professor Fam is a resident of Nassau County.

14. At all times relevant to this proceeding, Plaintiff was and is an enrolled student at LaGuardia Community College.

## PREDICATE NOTICES

15. Plaintiff timely served a Notice of Claim on Defendants CUNY and LaGuardia on January 5, 2018.

## MATERIAL FACTS

16. In or around the Fall of 2017, Plaintiff enrolled at LaGuardia Community College as a student. Plaintiff planned to take courses towards a liberal arts major so that she could eventually pursue a Masters in Occupational Therapy and launch a career as an occupational therapist.

17. Plaintiff enrolled in the "Human Anatomy and Physiology" course taught by Professor Fam during the Fall 2017 semester.

18. In or around early October 2017, Plaintiff sought academic assistance from Professor Fam and on October 5, 2017 Plaintiff emailed Professor Fam to attend his office hours.

19. In a reply to Plaintiff's email on that same day, Professor Fam requested Plaintiff's phone number and said he would try to arrange for a meeting soon. Professor Fam subsequently initiated an exchange of text messages, and eventually Professor Fam and Plaintiff planned to meet on October 9, 2017.

20. In text messages that he sent on October 9, 2017, Professor Fam sought to meet at Plaintiff's apartment: he texted, *inter alia*, that he "might be able to come over," stated that Plaintiff "need only to cook a nice, delicious dinner!" and asked for her address. These communications concerned Plaintiff, and she consulted friends about how to handle the situation without offending Professor Fam. Plaintiff suggested multiple times that she and Professor Fam meet at a public place, but Professor Fam insisted on meeting at her home. Plaintiff, fearing that she would offend her professor and perhaps jeopardize her grade in his class, finally relented and gave him her address.

21. Shortly before arriving, Professor Fam indicated that he wanted to shower at Plaintiff's home: he asked, "you have a bathroom?" and then wrote, "I need a shower too[.]"Alarmed, Plaintiff sought to prevent him from coming, saying, "You better go home then!", but Professor Fam responded "I am here already", "where you live[.]"

22. Plaintiff had texted her roommate to see if she could be in the apartment when Professor Fam would be there, but the roommate was unavailable and did not respond until after Professor Fam had arrived at Plaintiff's apartment.

23. While at her apartment Professor Fam proceeded to make sexual advances on Plaintiff, including but not limited to the following: Upon his arrival, Professor Fam kissed her on the cheek while embracing her and handed her a bag that contained a bottle of wine and some papers. He proceeded to sit on Plaintiff's couch, told her that he wanted to chat, and gestured to her to sit down next to him.

24. Professor Fam told Plaintiff that he needed a friend, said he was lonely, and described problems in his marriage. Additionally, Professor Fam repeatedly asked Plaintiff if she'd sell her body if she didn't get the grade she wanted in the class. During these communications,

Professor Fam repeatedly tried to hold Plaintiff's hand. Professor Fam unbuttoned his shirt to reveal a scar and claimed to have a heart condition that left him with just a few years to live.

25. To try to distance herself from Professor Fam, Plaintiff got up and went to the kitchen, but Professor Fam followed her, leaned in to hug her, and told her to relax. He poured two glasses of wine and repeatedly encouraged Plaintiff to drink, but she declined. He asked her why she was so tense, said that he could make things much easier for her, and repeatedly asked if she would be his "friend." Plaintiff asked what he meant and whether he meant sex, and Professor Fam confirmed that he did. He suggested they meet once a week and told Plaintiff it wouldn't be "that hard" for her because of his heart condition. Professor Fam also stated that other professors have these kinds of arrangements with students.

26. In response to these communications and gestures, Plaintiff repeatedly tried to redirect the conversation to academic matters, communicate that Professor Fam was her professor not her friend, and make clear she was not interested in a sexual relationship. Plaintiff was unambiguous in her expressions of disinterest in Professor Fam's advances and proposition of a sexual *quid pro quo*.

27. Professor Fam became aggravated and told Plaintiff that she was too uptight, that "English women are too stiff,"[1] and drew a contrast with "Spanish girls." He reached for papers he had brought and handed her what appeared to be questions and answers for the following day's scheduled quiz and told Plaintiff to think about his offer and make a decision about whether she wanted him to "help" her. He said she could have a very easy semester, but said "good luck" if she wanted to take the "hard route." Then, Professor Fam left. In all, Professor

---

[1] Plaintiff is Australian.

5

Fam spent approximately three hours at Plaintiff's apartment, from his arrival at approximately 5 pm until he left just before 8 pm.

28. Following Professor Fam's departure, Plaintiff was extremely distressed and unable to return to Professor Fam's class. Plaintiff reported Professor Fam's harassment to LaGuardia on October 18, 2017, in a letter sent by her counsel to Maria Cook, Esq., Executive Counsel to the President & Labor Designee. Plaintiff subsequently detailed her experiences in an in-person meeting at LaGuardia on November 7, 2017, with Christopher Carozza, Esq., Chief Diversity Officer/Affirmative Action Officer/Title IX Coordinator.

29. Prior to the incidents at issue here, students of Professor Fam reported that he often made inappropriate comments of a sexual nature during class.

30. Professor Fam himself, in his interactions with Plaintiff on October 9th, 2017, stated that other professors at LaGuardia had quid pro quo arrangements with students where sexual favors were exchanged for good grades.

31. Upon information and belief, Professor Fam provided other female students with answers to class quizzes and/or tests, presumably in exchange for sexual favors.

32. Despite the evidence demonstrating prior misconduct and sexual harassment by Professor Fam, as well as an apparent wider culture of similar behavior by LaGuardia professors, LaGuardia did not provide Plaintiff with appropriate, adequate, or prompt remedial, corrective and/or supportive measures when she reported her experience of sexual harassment.

33. While Plaintiff requested as an interim measure that she be withdrawn from Professor Fam's course without a mark on her transcript and that she be reimbursed for the amounts she spent in connection with the course, LaGuardia refused to grant these requests. While

LaGuardia conducted an investigation, the investigation was characterized by substantial delays and secrecy.

34. On January 19, 2018, Plaintiff received a Determination Letter from LaGuardia, which confirmed that LaGuardia deemed her allegations against Professor Fam to be substantiated. LaGuardia concluded that Professor Fam, after inviting himself to Plaintiff's apartment, "offered [her] a good grade in [her] Human Anatomy and Physiology Fall I 2017 class in exchange for sexual favors"; "hugged and kissed" her "without consent"; told her she "could be a sex worker"; and told her "multiple times that [she] should take him up on his offer of good grades and coursework help in exchange for sexual favors".

35. Despite making clear findings of sexual harassment, LaGuardia proposed extremely limited and inadequate "corrective actions." They were, in sum and substance, 1) to relieve Professor Fam from his teaching responsibilities for the next 18 months and to place the Determination Letter on his record; 2) to cover the costs of Plaintiff's course materials from the last semester and of her re-enrollment in Human Anatomy and Physiology I (without removing the "W" from her transcript); and 3) to provide free psychological support services to Plaintiff for the duration of her enrollment at LaGuardia.

36. The limited corrective actions offered by LaGuardia were insufficient to remedy the injuries sustained by Plaintiff.

37. LaGuardia's response was inadequate, erroneous, wholly improper, and significantly delayed so as to constitute deliberate indifference and condoning an environment which purported to treat claims of unconsented touching and sexual harassment as trivial and not worthy of meaningful attention.

38. Plaintiff incurred substantial economic and non-economic damages as a result of the incidents and conduct described above.

39. Plaintiff suffered substantial emotional distress, including severe stress, anxiety, depression, feelings of shock, betrayal, exploitation, humiliation, panic, sadness, hopelessness, and disappointment.

40. As a result of this emotional distress, Plaintiff has experienced daily crying episodes, recurring nightmares and difficulty sleeping, headaches, dizziness, nausea shortness of breath and trembling, weight loss and gastrointestinal effect, and hair loss.

41. Because of Defendants' actions and/or omissions, Plaintiff was unable to fulfill her full potential as a student, and accordingly, was caused to suffer a decline in her grades. The sexual harassment she endured caused her to dread going to class, caused her to lose her self-esteem. As a result she has become fearful of her academic, professional and financial future. Plaintiff has even felt unsafe in her own home because Professor Fam knows where she lives. Plaintiff experiences an ongoing fear that she will be subject to another episode of harassment.

42. To cope with the emotional distress that she is under, Plaintiff has needed to, and will continue to need to receive mental health treatment not merely while she continues to be enrolled at LaGuardia but for many years afterwards.

43. With respect to economic damages, Plaintiff lost the value of the amounts she spent in connection with Professor Fam's class. As a result of her reduced courseload (and any possible adverse effect on her academic standing), Plaintiff also lost and expects to continue to lose financial aid.

44. In addition, Plaintiff's emotional distress has impaired her ability to work. Plaintiff had to reduce her work hours which resulted in lost wages. Additionally, Plaintiff's ongoing distress

and fear of further harassment has caused her to stop working as a freelance makeup artist, causing a substantial loss of income. Plaintiff also had to incur expenses on treatment to cope with the emotional distress caused by these events.

45. Plaintiff has fallen at least one semester behind academically because of her withdrawal from the Human Anatomy and Physiology course, and she experiences ongoing doubts about whether to continue to pursue a degree at LaGuardia. Because Plaintiff's experiences have slowed, or even halted, her pursuit of a college degree, and impaired her current work, her future earnings potential has been significantly diminished.

**AS A FIRST CAUSE OF ACTION FOR
VIOLATION OF TITLE IX OF THE
<u>EDUCATIONAL AMENDMENTS OF 1972, 20 U.S.C. § 1681</u>
<u>(Against Defendants CUNY and LaGuardia)</u>**

46. Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

47. Upon information and belief, Defendants CUNY and LaGuardia receive federal financial assistance.

48. Plaintiff sustained harassment on the basis of her gender.

49. Such harassment was so severe, pervasive, and/or objectionably offensive that it deprived her of access to educational opportunities or benefits provided by Defendants.

50. Defendants CUNY and LaGuardia had actual knowledge of the harassment sustained by Plaintiff and had, or should have had, knowledge of the hostile environment engendered by professors, including Professor Fam.

51. Defendants CUNY and LaGuardia's response to the harassment sustained by Plaintiff and/or its lack of response was deliberately indifferent insofar as the response or lack thereof was unreasonable and insufficient in light of known circumstances.

## AS A SECOND CAUSE OF ACTION FOR
## <u>DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u>
## (<u>Against all Defendants</u>)

52. Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

53. The New York City Administrative Code § 8-107(4) provides that:

> It shall be an unlawful discriminatory practice for any person who is .. an agent or employee of any place or provider of public accommodation:
>
> 1. Because of any person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service, or alienage or citizenship status, directly or indirectly:
>
> (a) To refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation.

54. Defendants CUNY and LaGuardia as educational institutions are providers of public accommodations. Defendant Fam is an employee of same.

55. Defendant Fam unambiguously harassed Plaintiff on the basis of her sex and threatened her education if she refused to have sex with him.

56. Defendants CUNY and LaGuardia failed or refused to initiate any reasonably remedial or corrective actions in order to prevent or minimize the deleterious effects Professor Fam's actions had on Plaintiff's access to her education at LaGuardia.

57. As such all of the Defendants denied Plaintiff full and equal enjoyment, on equal terms and conditions, of the services offered by LaGuardia and CUNY.

## AS A THIRD CAUSE OF ACTION FOR
## BREACH OF CONTRACT
## (Against Defendants CUNY and LaGuardia)

58. Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

59. Plaintiff and Defendants CUNY and LaGuardia entered into a valid and binding contract.

60. Plaintiff substantially performed all of her duties and obligations under that contract, including by paying monetary consideration to CUNY and LaGuardia.

61. In return for the monetary consideration paid by Plaintiff, CUNY and LaGuardia made specific promises to plaintiff, including agreeing:

   a. to provide plaintiff with an educational environment free of sex discrimination in all programs and activities, including academic programs and school-sponsored activities on and off campus;

   b. to provide plaintiff with an educational environment free of sexual harassment;

   c. to respond promptly to complaints of sexual harassment, including unwelcome advances and sexist comments, whether they occurred in a single episode or were part of a recurring pattern of behavior;

   d. to conduct an investigation into a complaint of sexual harassment promptly, thoroughly, and in an impartial manner;

   e. to take prompt and effective steps to reasonably end any sexual harassment, prevent its recurrence, and address its effects; and,

   f. to provide ongoing assistance and support to students who make allegations of sexual harassment, gender-based harassment and sexual violence.

62. These promises are set forth and were communicated to Plaintiff in CUNY's Policy on Sexual Misconduct[2].

63. Defendants CUNY and LaGuardia breached their contract with Plaintiff by failing to perform the contractual duties and obligations described above.

## AS A FOURTH CAUSE OF ACTION FOR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Against Defendant Fam)

64. Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

65. As further recounted above, Professor Fam's actions were conducted with malice and with the willful intent of inflicting emotional distress upon the plaintiff.

66. Professor Fam's behavior was atrocious, utterly untenable in a civilized community and was so outrageous as to be beyond all possible boundaries of decency.

67. As a result of Professor Fam's conduct, Plaintiff suffered severe emotional distress and mental anguish and other damages.

68. By reason of the foregoing, Plaintiff is entitled to recover all of her damages from Professor Fam, including punitive damages, in an amount to be fixed by a jury and court.

## AS A FIFTH CAUSE OF ACTION FOR
## ASSAULT AND BATTERY
## (Against Defendant Fam)

69. Plaintiff repeats, reiterates, and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

70. The aforesaid occurrences and resulting injuries to Plaintiff were caused by reason of the intent, carelessness, and recklessness of Defendant Fam. Defendant Fam, suddenly and without

---

[2] LaGuardia's Student Handbook references Policy on Sexual Misconduct and incorporates in full.

provocation, did physically assault and batter Plaintiff, initiating unwelcome contact and causing Plaintiff to sustain damages.

71. By reason of the foregoing, Plaintiff is entitled to recover all of her damages from Professor Fam, including punitive damages, in an amount to be fixed by a jury and court.

### AS A SIXTH CAUSE OF ACTION FOR
### TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP
### (Against Defendant Fam)

72. Plaintiff repeats, reiterates, and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

73. Plaintiff had a valid contractual agreement with Defendants CUNY and LaGuardia as outlined in the LaGuardia Community College Student Handbook, Academic Requirements and Policies, and the CUNY Policy on Sexual Misconduct.

74. Professor Fam threatened to grade Plaintiff poorly unless she agreed to give him sexual favors, and/or to have sex with him.

75. Plaintiff was of course under no obligation whatsoever to engage in sexual relations of any kind with Professor Fam.

76. Professor Fam unlawfully attempted to coerce Plaintiff and in doing so interfered with Plaintiff's contractual relationship with Defendants CUNY and LaGuardia.

77. Professor Fam's unlawful conduct caused a breach of the contract between Plaintiff and Defendants CUNY and LaGuardia.

78. Professor Fam's interference was intentional and caused Plaintiff to suffer damages as described in the paragraphs 38 through 44 herein. By reason of the foregoing, Plaintiff is entitled to recover all of her damages from Professor Fam, including punitive damages, in an amount to be fixed by a jury and court.

**JURY DEMAND**

79. Plaintiff is entitled to and demands a jury trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against all defendants, jointly and severally, awarding her: compensatory and punitive damages in amounts to be determined at trial; reasonable attorneys' fees and the costs of this action as authorized by 42 U.S.C. § 1988 and N.Y.C. Admin. Code §8-502 and such other and further relief this Court deems just and proper..

Dated: October 4, 2018

                Respectfully Submitted,

                /s/ Carrie A. Goldberg
                Carrie A. Goldberg
                Aurore C. DeCarlo
                C.A. Goldberg PLLC
                16 Court Street, Suite 2500
                Brooklyn, NY 11241
                Tel. (646) 666-8908
                Fax. 347-599-9998
                carrie@cagoldberglaw.com
                aurore@cagoldberglaw.com